DA 09-0042

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 369N

JULIE BENDER and DUANE BENDER,

      Plaintiffs and Appellants,

  v.

WIEDRICK'S CRANE SERVICE, INCORPORATED,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DV 2007-1324
                    Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Elizabeth J. Honaker, Honacker Law Firm, Billings, Montana

      For Appellee:

           William A. D'Alton, D'Alton Law Firm, P.C., Billings, Montana

                        Submitted on Briefs:  October 8, 2009

                                Decided:  November 3, 2009

Filed:

      _____
                             Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Duane Bender (Duane) and his niece, Julie Bender (Julie) (jointly, "Benders"), operate a partnership that rents mobile homes and manufactured homes. In 2007, the partnership decided to develop a lot on DeVries Lane between Rockvale and Joliet, Montana. Duane owned a manufactured home located on King Avenue in Billings. The Benders hired Wiedrick's Crane Service to move this manufactured home from King Avenue to the DeVries Lane parcel. During the move, one-half of the manufactured home collapsed. Benders sued Wiedrick for negligence. Wiedrick denied negligence and filed a counterclaim for breach of contract, claiming nonpayment for services. A jury in the Thirteenth Judicial District Court in Yellowstone County issued a special verdict granting judgment in favor of Wiedrick and awarding Wiedrick $2,320 in damages and costs of $1,413.86. Benders appeal. We affirm.

## ISSUE

¶3     The sole issue presented on appeal is whether the District Court abused its discretion in admitting evidence of Benders' liability insurance into the record at trial.

## FACTUAL AND PROCEDURAL BACKGROUND

2

¶4 In 1994, Duane Bender and his former wife, Vicki, purchased the manufactured home involved in this case. The seller of the home, Big Sky Homes, hired Wiedrick's Crane Service to transport the home to Duane and Vicki's property on King Avenue. At the time of the purchase, transport, and placement onto the foundation on King Avenue, the home had a steel frame attached to it to provide structural support. In 2007, Duane and Julie decided to move Duane's manufactured home to the DeVries parcel.

¶5 Duane, the owner of two mobile home parks and a construction company, testified that he had in the past moved mobile homes using his own equipment. He chose not to move this manufactured home, however, because he had no experience in lifting, or craning, a manufactured home. He did, however, choose to prepare the home for moving by Wiedrick. He called Wiedrick and asked what should be done to prepare the home for lifting and transporting. Wiedrick claims he told Duane to "notch" the wooden frame to allow rigging strips to be attached. Duane claims Wiedrick told him to cut two two-foot gaps in the steel frame for rigging.

¶6 Duane directed Wiedrick to lift the home by crane and place it on Duane's trailer. Duane would drive the home to the DeVries location and, once there, Wiedrick would lift the two sections of the home from Duane's trailer by crane and place it onto the DeVries foundation. Duane would then complete the project by putting the sections together and securing it to the foundation.

¶7 On July 2, 2007, Wiedrick arrived at Duane's King Avenue property to lift the home. He stated that he informed Duane that Duane should not have "notched" the steel frames. Duane instructed him to lift and load the sections onto Duane's trailer anyway.

Wiedrick did so. Duane claims that while the home was in the air, he removed the two end pieces of the continuous steel frame in accordance with Wiedrick's instruction. Subsequent to this, however, and without Wiedrick's knowledge or approval, Duane removed the entire perimeter frame.

¶8 On July 20, 2007, Wiedrick arrived at the DeVries location to lift the two sections of the home from Duane's trailer and place them onto the concrete foundation. It was at this time Wiedrick noticed that the entire perimeter frame had been removed. He testified that he told Duane this frame should not have been removed. He also testified that Duane told him to lift both sections and place them onto the foundation. When Wiedrick expressed concern about the stability of the sections because the frame had been removed, Wiedrick claimed that Duane told him "not to worry about it" because he had two or three insurance policies.

¶9 Wiedrick lifted the first section and placed it on the foundation without any problems. Shortly after lifting the second section of the home, it collapsed, fell to the ground, and was destroyed.

¶10 In October 2007, Benders sued Wiedrick for negligence and sought damages for debris clean-up, replacement of the destroyed section of the home, construction costs, loss of rental profits, interest on their construction loan, litigation costs and attorney fees. Wiedrick denied negligence and counter-claimed for breach of contract because Benders had not paid his bill.

¶11 In October 2008, Wiedrick filed a motion in limine seeking, among other things, to preclude any reference to the fact that Wiedrick's Crane Service had insurance.

4

Benders did not object to Wiedrick's motion in limine nor did they seek to have mention of Benders' insurance excluded from testimony. In Wiedrick's portion of the pretrial order, he referenced Duane's statements regarding insurance on the day of the accident, indicating that he intended to testify regarding those statements. Benders did not object.

¶12 A jury trial was held on December 1 and 2, 2008. During the trial, various witnesses testified that the steel frame attached to a manufactured home provides critical structural support and should not be removed. Some of these witnesses testified that they had told Duane prior to the move to DeVries that the structural frame should not be removed. As indicated in his pretrial order, Wiedrick testified at trial about Benders' statement regarding insurance. Benders did not object to the testimony. In later testimony, Wiedrick again referenced Benders' insurance statement to the jury, at which time, Benders' attorney asked to approach the bench. The judge denied his request.

¶13 The jury returned a special verdict in which it held that Wiedrick was not negligent and that the Benders breached the contract with Wiedrick. It awarded damages to Wiedrick in the amount of $2,320. Subsequently, the court awarded costs and fees to Wiedrick in the amount of $1,413.86. Benders appeal.

## STANDARD OF REVIEW

¶14 We review a district court's evidentiary rulings for an abuse of discretion. A district court possesses broad discretion to determine the admissibility of evidence. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *Malcolm v. Evenflo Co., Inc.,* 2009 MT 285, ¶ 29, 352 Mont. 325, ___ P.3d ___ (citations omitted).

5

**DISCUSSION**

¶15 *Did the District Court abuse its discretion in allowing admission of evidence of Benders' liability insurance into the record at trial?*

¶16 Benders present various arguments on appeal as to why the District Court's decision to allow evidence of Benders' insurance to be presented to the jury was an abuse of discretion. Wiedrick presents arguments based on M. R. Evid. 411, to the effect that evidence of liability insurance can be admissible when offered "for another purpose." While we agree with some of Wiedrick's points, we conclude the dispositive reason the court did not abuse its discretion is that Benders failed, at every available opportunity, to object to Wiedrick's reference to Benders' insurance or to prevent Wiedrick from testifying about it at trial.

¶17 Benders did not object during Wiedrick's deposition testimony; they did not file a motion in limine to seek exclusion of such evidence despite knowing that Wiedrick expressly sought such protection for himself through such a motion; they did not contest it when Wiedrick's pretrial order indicated his intent to testify regarding Benders' "insurance" statements; and they did not raise a contemporaneous objection at trial when Wiedrick first testified before the jury about Benders' claim. They did not move to strike the testimony nor did they seek a curative instruction. Benders argue that the second reference by Wiedrick on the stand to Benders' insurance prompted their attorney to seek a side bar with the judge for the purpose of objecting, moving to strike and/or seeking such a curative instruction, but that the judge denied the request. We are not persuaded that it "was very apparent from the context of the testimony at the trial" that this was

Benders' counsel's intent, given that Benders failed to avail themselves of the multiple opportunities to object to or attempt to exclude such evidence from being presented at trial.

¶18    It is well-established that failure to make a timely and specific objection constitutes a waiver of the right to claim error on appeal. *Jenks v. Bertelsen*, 2004 MT 50, ¶ 26, 320 Mont. 139, 86 P.3d 24. *See also Hunt v. K-Mart Corp.*, 1999 MT 125, ¶ 10, 294 Mont. 444, 981 P.2d 275 (failure to make a timely and specific objection constitutes a waiver), and M. R. Evid. 103(a)(1) (error may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike appears of record . . . .). Benders' eventual objection was simply "too little-too late."

¶19    It is appropriate to decide this case pursuant to Section I, Paragraph 3(d)(i) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. It is manifest on the face of the briefs and the record before us that the appeal is without merit because the legal issues are controlled by settled Montana law, and there was no abuse of discretion by the District Court.

## CONCLUSION

¶20    For the foregoing reasons, we affirm the District Court's admission of Duane's statements referencing his liability insurance at trial.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON